### NAGLE, Commissioner of Immigration, v. WONG NGOOK HONG et al.

Circuit Court of Appeals, Ninth Circuit.
August 6, 1928.

No. 5388.

Aliens ⊜⇒32(8)—Discrepancies in testimony held not such as to authorize denial of applications of Chinese persons for admission on ground fathers were citizens.

Certain discrepancies in testimony of applicants and witnesses *held* insufficient to authorize denial of applications for admission of Chinese persons on ground that their fathers were citizens of the United States and domiciled therein.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Habeas corpus by Wong Ngook Hong and another against John G. Nagle, as Commissioner of Immigration for the port of San Francisco. Order granting the writ and discharging petitioners from detention, and defendant appeals. Affirmed.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellant.

Geo. A. McGowan, of San Francisco, Cal., for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The two appellees, who claim to be cousins, are of Chinese parentage and nativity. On August 25, 1927, they applied at the port of San Francisco to enter the United States upon the ground that their fathers were both citizens of the United States and were domiciled therein. Hearings were held about a month later, resulting in the denial of both applications. Whereupon a petition for a writ of habeas corpus was presented in their behalf to the District Court. In due course the District Court granted the writ, and from the order discharging them from detention the Commissioner prosecutes this appeal.

The appellee Wong Gung Jue is a boy 13 years of age. His alleged father, Wong Wing, was born in San Francisco in 1879, and with the exception of three short visits to China has always lived in the United States; his present residence being Los Angeles. The appellee Wong Ngook Hong is 21 years old, and claims to be the son of Wong Theung, who, as he testifies, was born in San Francisco in 1877, and with the exception of two short visits to China has always lived in the United States.

The nativity and citizenship, as claimed, of the two alleged fathers, are now conceded by the Commissioner, and the one question, therefore, in each case, is the relationship of the applicant to the alleged father. Upon that issue it is further conceded that the alleged father, in each case, was in China during a period consistent with the theory of his paternity as claimed.

In the case of Wong Gung Jue, the applicant, his alleged father, and one Wong Wai Han gave testimony. There was also considered the record in a hearing had in 1925 upon the application to enter of one Wong Bing Jue, who claimed to be the older son of Wong Wing.

In the case of Wong Ngook Hong, there was received the testimony of the applicant, his alleged father, and Wong Wai Han. In this case, too, both Wong Gung Jue and his alleged father gave further testimony at the

request of the immigration officials. In one case or the other, or both, other immigration records were considered.

Owing to the wide range of the examination of the several witnesses, repetition, and minute detail, the records are voluminous. Certain discrepancies are relied upon by the Commissioner, but we agree with the lower court that they are either only apparent or insignificant. No group of witnesses, however intelligent, honest, and disinterested, could submit to the interrogation to which these witnesses were subjected without developing some discrepancies. We analyze some of them.

According to the testimony, the homes of the two boys were not far apart, in the very small village of Wong Gar. Near by was another small village, called Sun Hah. To a question whether, in going from one village to the other, you "cross any streams or rivers or bodies of water," Wong Wing, who, it is to be remembered, lived only for three short intervals in China, the last being in 1914, answered, "Yes; we cross, a small stream by means of a stone bridge over it." He was not asked to describe the bridge or estimate the width of the stream, which, as he stated, was ordinarily dry. Later the applicant Wong Gung Jue was asked the question, "Are there any streams or creeks between your village and Sun Hah village?" to which he answered, "No." And to another question he answered that "you can walk from one village to another without crossing a bridge."

Beyond all question, both witnesses had been in these villages and were more or less familiar with them, and how, therefore, such a discrepancy, even if unexplained, has any real significance touching the one material issue, is not apparent. Granted that two persons come from the same locality, there is no more reason for thinking they will disagree in respect to its geography, if they are falsely asserting relationship, than if they are making such claim in good faith. By the Board of Special Inquiry, however, this is pointed out as one of the eight major discrepancies, on the basis of which the witnesses were discredited. But under the testimony of the other applicant, Wong Ngook Kong, such substance as the discrepancy appears to have melts away. He also was asked the question whether, in going from one village to the other, you cross any streams or rivers, and he answered, "No," but added that there is an irrigation ditch that has a small bridge over it, and that the ditch is often dry.

Much is also made of the discrepancy respecting the overflow of a river near the Wong Gar village. Both applicants agreed upon the location of the river and that it sometimes overflowed its banks. The younger one did not remember any overflow that came into the house of his father or of his uncle. The older boy testified that the last overflow was "several years ago," and, though he did not remember the exact year, he stated that it was while he was away at school at Sun Ning City. He further stated that at that time the water "barely came into the house [his father's]; * * * the floor was covered;" and to the same extent, apparently, entered the house of his uncle, Wong Wing. The first year he was in school at Sun Ning was 1922, at which time the other applicant was only 8 or 9 years old. The older boy was not asked how, if he was away from home at school, he could have had knowledge of the extent of the overflow; and besides, if the water barely came into the house and soon subsided, the younger boy, who was also then attending school and might have been away from home at the particular time, may not have been greatly impressed by the fact that the river was slightly higher than he had seen it at other times. But again it is to be said that both boys undoubtedly lived there, and how the trivial discrepancy can be regarded as discrediting the theory of their relationship, we are unable to see. It is no more inconsistent with one theory than with the other.

Wong Wai Han testified that he went from the United States to China in 1925 and remained there about 18 months; he visited Wong Wing's home, where he saw the boy, Wong Gung Jue, two or three times. Upon then being asked whether he ever met the boy at any other place than in Wong Gar village, he replied, "Sometimes I *saw* him going to school." He further stated that he, the applicant, went to school in Sun Hah village, and that he, the witness, never spoke to him except at his home. And to the ensuing question, "How did you know it was him who was going to school?" he replied, "Because I saw him the first time I visited him in his home and I saw him carrying a book, so I knew he was going to school." In the course of the applicant's examination he was asked about Wong Wai Han's visits at his (the applicant's) home and in respect to this matter his testimony was in good accord with that of Wong Wai Han. Then to the question, "Did you ever meet him in Sun Hah village, when you were going to school there?" he answered, "No." Clearly

the answer is not at all necessarily inconsistent with the testimony of Wong Wai Han as above quoted. But it is assigned by the Board of Special Inquiry as one of the material discrepancies, with this comment, which manifestly does not fairly reflect the actual testimony: "The witness [Wong Wai Han] * * * states he *met* the applicant occasionally when the latter was going to school in Sun Hah village, that he knew it was the applicant because he was carrying a book. The applicant states * * * that he never *saw* the witness at any time in Sun Hah village until he *met* him at his wedding feast."

We cannot go further in an analysis of the discrepancies relied upon without unduly prolonging the opinion. Perhaps some explanation of the conclusion reached by the administrative officers, particularly in the Wong Gung Jue case, may be found in the mental attitude with which apparently they entered upon the hearing. To illustrate: Wong Wing was the first witness examined, the officers themselves being the questioners. After answering a number of questions with apparent candor, the witness' attention was called to the fact that the application of Bing Jue, whom he claimed as his oldest son, had been denied in 1925. Up to this time his testimony had been, and indeed upon the whole it continued to be, in good accord with his testimony in the Bing Jue case. Then, without showing him his former testimony, or calling his attention to any alleged misstatements therein, this inquiry:

"Q. Was he [Bing Jue] admitted to the United States? A. No.

"Q. He was excluded on your own testimony; is that right? A. I do not know who made the mistake at that time.

"Q. You testified in this case as a principal witness, did you not? A. Yes.

"Q. Were the statements you made, testifying for Wong Bing Jue, correct and true? A. Nearly all true and correct.

"Q. Then you appear to have knowledge of several misstatements you made at that time in order to secure his admission? A. Yes.

"Q. Then, according to your admissions now, you were guilty of perjury, were you not? A. I did not commit perjury.

"Q. But you do admit telling several untruths in order to secure Wong Bing Jue's admission to the United States? A. No; I stated what I knew to be a fact."

Again: The witness repeatedly stated that while in China he had lived only in the Wong Gar village. But in the course of his examination it was disclosed that at first,

when he went to China in 1906, he stayed in the Sun Hah village five or six days. That "discrepancy" was apparently deemed sufficient to warrant the following:

"Q. It is very evident that you at one time lived in the Sun Hah village? A. I only lived in the Sun Hah village for four or five days, when I first arrived there in K. S. 32 (1906), and since then I have lived in the Wong Gar village.

"Q. You state now you never lived in any other village than the Wong Gar village? A. That is right, but, as I stayed there only a few days, I did not consider that my permanent residence.

"Q. It is evident from your statements in C. R. 14 (1925) and the statements you are making, from comparison, that very little credence may be placed in anything you may testify to. A. I am telling everything that is true.

"Q. You did not state the truth when you stated you never lived in any other village than Wong Gar village to-day? A. When I stated I stayed in the Sun Hah village a few days, I did not consider that as my regular residence."

And again: The witness testified that his mail was delivered at the place of business of the Wo Hee Company in Los Angeles, and that he, the witness, roomed in a rooming house close by on the same street. Then this from the Board, without waiting for an answer from the witness: "If you have been living at 315 Apablasa street, Los Angeles, since 1914 (C. R. 3), why is it necessary to send any mail you may receive in this country to the Wo Hee Company, who lived at 321½ on the same street? It is apparent, from your statement just made, that Chin Sen, and not you, is the father of this applicant, and it was to him that this letter was written." When there was an opportunity to give it, the very reasonable and credible answer, which could have been contradicted, if not true, was: "Because all the people who live at 315 have their mail sent to 321½ Apablasa street. There is no mail received at 315 Apablasa street."

Such an attitude is not disclosed in the Wong Ngook Hong case, the Board in which seems to have been differently constituted. Strangely enough, however, while in that case the Board of Special Inquiry expressly recorded that the *"demeanor"* of the witness Wong Wai Han, while testifying, was "fair," and that of the applicant and of his alleged father was "good," and that these two "testified in a straightforward manner," in the opinion filed by the Board of Review it is

said, "The Board of Special Inquiry found the demeanor of the witnesses to be unsatisfactory."

No new principle of law is involved, and citation of cases is therefore thought to be unnecessary.

The order appealed from is affirmed.