**WONG TSICK WYE et al. v. NAGLE, Commissioner of Immigration.**

Circuit Court of Appeals, Ninth Circuit.
June 24, 1929.

No. 5810.

Geo. A. McGowan, of San Francisco, Cal., for appellants.

Geo. J. Hatfield, U. S. Atty., and George M. Naus, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from an order denying a petition for a writ of habeas corpus in behalf of two Chinese applicants for admission to the United States. It is conceded that the alleged fathers of the two appellants are citizens, so that the only question at issue is one of relationship. The witnesses appearing before the board of special inquiry were the alleged grandfather of one of the appellants, who is also the alleged father of the other appellant; the alleged brother of one of the appellants, who is also the alleged father of the other appellant; the two appellants themselves; and a fifth witness, to whose testimony no particular importance is attached. The several witnesses were examined in great detail as to matters of family history, relatives, persons, and places, and it must be conceded that the relationship was fully established, unless the department was justified in disregarding the testimony and in excluding the appellants because of certain discrepancies in the testimony, to which we will now direct our attention.

The alleged grandfather testified that one of his sons, Wong Sing Ngip, came to the

United States in 1912; that he left San Francisco about a year later; that he had not heard from him since and did not know whether he was living or dead; that he received eight or ten letters a year for the past three years from the appellant who claims to be his son; that before that time he had received letters in the name of his son, but thought that they were written by his wife; and that the last letter received from his son was about three weeks before the arrival of the latter in San Francisco. The son, who was an alleged brother of one of the appellants and the alleged father of the other, testified that his brother, Wong Sing Ngip, came to the United States in 1912, and that he had heard that he died seven or eight years before. He further testified that he made a trip to China in December, 1927, returning in October, 1928; that the appellants did not attend school in China after 1927, although he testified at another place that he met the appellants at school in April, 1928, and on other occasions during that year; that his alleged son sometimes slept at the school and sometimes at home, both during school time and vacation; that there was no storehouse for fuel located back of the school building; that at his home in China they partook of two meals a day, the first at about 9 in the morning and the second between 12 and 1 in the afternoon. The appellant who claimed to be a son of the first witness testified that he wrote to his father once or twice each year for the last year or two; that he had not written him at all during 1928; and that he did not write to him as far back as three years ago. In most respects there is entire harmony between the testimony of the two appellants. They both testified that they attended school until the seventh month of 1928, quitting school at the beginning of the summer vacation. One of them testified that they both slept at the schoolhouse all the time, including vacation, while the other testified that he slept at the schoolhouse except during vacation. One of them testified that there is a storage house for fuel back of the schoolhouse, while the other testified that there was not, and both testified that the first meal was about 9 in the morning and the second meal about 3 in the afternoon. It seems to us that whatever discrepancies are found in this testimony are unimportant, considering the scope of the examination when compared with the innumerable particulars in which the witnesses are in full accord.

This and other courts having to do with immigration cases are constantly called upon to consider the effect of discrepancies of one kind or another in testimony taken before the immigration department. In Go Lun v. Nagle, 22 F.(2d) 246, this court said: "We may say at the outstart that discrepancies in testimony, even as to collateral and immaterial matters, may be such as to raise a doubt as to the credibility of the witnesses and warrant exclusion; but this cannot be said of every discrepancy that may arise. We do not all observe the same things, or recall them in the same way, and an American citizen cannot be excluded, or denied the right of entry, because of immaterial and unimportant discrepancies in testimony covering a multitude of subjects. The purpose of the hearing is to inquire into the citizenship of the applicant, not to develop discrepancies which may support an order of exclusion, regardless of the question of citizenship."

In Nagle v. Wong Ngook Hong, 27 F. (2d) 650, we said: "Owing to the wide range of the examination of the several witnesses, repetition, and minute detail, the records are voluminous. Certain discrepancies are relied upon by the Commissioner, but we agree with the lower court that they are either only apparent or insignificant. No group of witnesses, however intelligent, honest, and disinterested, could submit to the interrogation to which these witnesses were subjected without developing some discrepancies."

Again, in Nagle v. Dong Ming, 26 F. (2d) 438, we said: "But it must be borne in mind that mere" discrepancies do "not necessarily discredit testimony. It is sometimes urged upon us that the testimony is impeached by its discrepancies, and sometimes by its complete accord. Both propositions are valid. But to be so, and to escape the charge of inconsistency, they must be understood in the light of the reason upon which they rest, and applied only within the range of such reason; otherwise, all testimony would be self-impeaching."

In Mason ex rel. Lee Wing You v. Tillinghast (C. C. A.) 27 F.(2d) 580, the court said: "So proceeding, the immigration tribunals succeeded in developing some very slight discrepancies on matters purely collateral, on which they ground their finding that the relationship is not reasonably established. But this euphemistic phrase must not be allowed to disguise the real situation. There is here no room for honest error. The family exists as the three witnesses describe it, unless the record as a whole furnished some basis upon which reasonable, truth-seeking

minds can ground a conclusion of fraud and perjury on the part of all three witnesses. There is no conflicting evidence, direct or indirect, on the question of relationship. As noted above, the three witnesses were in absolute agreement on the vital issue of relationship and as to who the family are. We assume that these tribunals are not bound by the rules of evidence applicable in a jury trial. But they are bound by the rules of reason and logic—by what is commonly referred to as common sense." See, also, Fong Tan Jew ex rel. Chin Hong Fun v. Tillinghast (C. C. A.) 24 F.(2d) 632.

The immigration officers found that there was a good family resemblance between the different parties claiming relationship, and, as said by this court in the Go Lun Case, a reading of the entire record leaves not the slightest room for doubt that the relationship was fully established and that the appellants are citizens of the United States. A contrary conclusion is arbitrary and capricious, and without any support in the testimony.

The judgment of the court below is therefore reversed, with directions to issue the writ of habeas corpus as prayed.