HOM CHUNG v. NAGLE, Commissioner of Immigration.

No. 6031.

Circuit Court of Appeals, Ninth Circuit.

May 19, 1930.

Stephen M. White, of San Francisco, Cal., for appellant.

George J. Hatfield, U. S. Atty., and Lucas E. Kilkenny, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

WILBUR, Circuit Judge.

An application for habeas corpus was made in the District Court on behalf of Hom Chung, a 14 year old Chinese boy, who was held by the immigration authorities under an order for deportation, having been denied entry upon the ground that he had failed satisfactorily to establish his relationship to his alleged father, Hom Quong, an American citizen. Upon his return from a visit to China in 1915, Hom Quong stated to the immigration authorities that he had married Ng Shee, and that they had a son, Hom Chung, born on the 6th day of September, 1915. When he later returned from China after another visit in 1925 he repeated the statement that he had a son named Hom Chung, born September 6, 1915, living in China with

his mother, Ng Shee, at Hom village, Hey Ping district, China. When this alleged son, Hom Chung, arrived at the port of San Francisco February 6, 1929, he applied for admission into the United States on the ground that he is a foreign-born son of Hom Quong, who is now living in Waterloo, Iowa.

The testimony of the alleged father in support of said application was taken at Omaha, Neb., of the son, who will be hereafter called the applicant, at San Francisco, and of his witness Quan Hay, in Los Angeles, Cal. There is no testimony directly opposed to that of the father and of the appellant as to their relationship, which is further corroborated by Quan Hay. As is the custom in these cases, the examination of the witnesses by the immigration authorities took a very wide range, not only concerning the relationship of the father and son, but also as to the family history, the names, and residences of the living relatives, the place of burial of deceased grandparents, and also as to the house in which the applicant Hom Chung was born and lived, the number of houses in the village, the number of rooms in the schoolhouse attended by Hom Chung, etc. There are two evident purposes of this line of examination: First, to ascertain appellant's familiarity with the home and family in which he claims to have lived and to which he claims to belong; and, second, to ascertain his familiarity with the village in which he claims to have resided. His father was also examined along the same lines, evidently to establish a basis of comparison. The immigration records show that the father departed from the United States for China on October 24, 1914, and again on June 14, 1923, and returned to the United States from China on December 24, 1915, and on May 19, 1925. As he remained in China during these periods of absence, aggregating about three years, it may be assumed that he testified truthfully to the name of the village in which he lived during his absence, and that he is reasonably familiar with such village which he testifies contains only twelve houses. The applicant was denied admission because of discrepancies between his testimony and that of his father.

In order to determine the effect of discrepancies between the testimony of the alleged father and his alleged son it may be fairly assumed that the father is stating the facts concerning the village in which he resided in China as accurately as his memory permits him to do. If he has deliberately and willfully sworn falsely to secure the admission of the appellant into the United States, it is reasonable to assume that such

perjury or falsehood is confined to the material fact of the appellant's relationship to him, and does not extend to immaterial details concerning the village in which he lived. Any erroneous statements he may have made concerning the village or his home therein would have no tendency to discredit his testimony that the applicant was his legitimate son. There is no reason why the father should testify falsely with relation to his home or village in order to lay a foundation for a claim that the applicant was his son. We may fairly accept the statement of the father under the circumstances as a standard or basis by which to judge the accuracy and veracity of the testimony of the son for the purpose of determining whether or not in fact the appellant lived in the same home and in the same village as the alleged father. The discrepancies between the statements of the father and son may be divided into two classes, one concerning the home and family and the other concerning the village. If the applicant is from the same home and family, he would, of course, be from the same village, and it is altogether likely that he is the son he claims to be. On the other hand, if he is familiar with the village and not with the home or family, it might have been inferred that an attempt has been made to substitute a boy from the same village as the alleged son of the father. The first question then is this: Was the boy from the home of the alleged father?

The father, examined at Omaha, Neb., testifies that his wife is named Ng Shee; that she has natural feet; that she is thirty-three years of age; that she is living in the Hom village, Hoy Ping district, China; that she has two sons, the applicant and Hom Yit, who lived with her; that his parents are Hom Gen Yem father and Ng Shee mother; that they are both dead and are buried in Chong Loong Hot cemetery, about a mile from the home village; that their graves are marked by a stone tablet; that when he was last in China he twice visited their graves, accompanied by the applicant; that his wife's father, Ng Yook Wah, and mother, Soo Hoo, are living; that her father is a physician in Chong Sar Market; that he has an older brother, Hom Chun, fifty-two years old, living in the United States; that this brother was last in China between 1921 to 1924; that applicant frequently saw him there; the brother sometimes wore a beard and sometimes was smooth shaven; the brother has been twice married; that his brother's first wife was named Dea Shee; that she is dead; that he has three sons, Hom Keung, aged

128

over twenty years and Hom Hing over twenty years, both living in the United States, and Hom Chee, aged eighteen living in China; that appellant has never seen Hom Keung, the eldest son, who came to the United States in 1915; that appellant has seen Hom Hing, who came to the United States in 1920; that his brother married Ng Shee after the death of his first wife. This second wife is thirty odd years old, living in China, and has three children, named Hom Ngin, aged sixteen years; Hom Yook, aged nine years, and Hom You, aged six years, all living in China and attending school there; that the applicant has attended school with them; that the home of applicant is constructed of brick, has two outside doors, one large and one small; the large door is on the east side; that the house has five rooms with tiled floors; that there is one window in each bedroom; that the bedroom on the east side has two beds, one in the northeast corner and one in the southwest corner; that the other bedroom was used for storage purposes. When the father returned from China in 1897, 1915, and 1925, he testified in agreement with his present testimony. The appellant testifying separately at San Francisco agrees with that of the alleged father on all these details as to the family. The father also testified to the following facts relating to the Hom village, Hoy Ping district, China: The village consists of twelve dwellings arranged in two rows; that the village faces north; that the home of the appellant is the second house from the east in the first row of dwellings; that Hom Chun, appellant's uncle, lives in the second house of the first row from the west; that is the fifth house from the east end of the row; that Hom Ah Way lived in the house next appellant's on the left, that is, the third house in the row; that there is a fishpond twenty or thirty steps from appellant's house; that the nearest market to the village is the Chung Sar Market, about one and one-third miles distant west; that none of the inhabitants of the village work at that market; that Hom Ah Bok is the oldest man in the village; that during his last visit to China the wife of Hom Ing How died in the village; that the village school-teacher is a man named Hom Soon Ngon, forty years old; that he is from the Hoy Ping district; that he slept in the schoolhouse, which is constructed of brick and stands at the east of the village and is the only public building therein; that eleven boys from other villages attend the school; that there are in all twenty pupils attending the school; that the tuition fee is $15 per year; that the Chong Loong Hot cemetery, in which

appellant's grandparents are buried, is on a level piece of ground about a mile from the village; that a dirt road connects the village with it; that the road crosses no streams of water between the village and the cemetery.

With all this the appellant's testimony agrees.

The following discrepancies occur in the testimony: The father states that the cemetery is west, and the appellant says south, of the village; the father states the road to the cemetery crosses swampy places where a few stones are laid; that there is water in the fields; the appellant says the road passes over dry ground; that it is not necessary to walk on stones in the road at any time of the year. The father states that his parents are buried with their heads to the east, the mother on the north side and that a single mound of earth covers both graves; the applicant states his grandfather's grave is above his grandmother's, about six feet apart, the ground slopes a little, that they are buried under separate mounds and he could walk between these mounds; the father states that there is a single stone monument at the graves giving the names of both parents, Hom Gen Yem and wife, Ng Shee, while the appellant states that there is a stone tablet over each grave, with the name of each grandparent on its respective tablet. The father states that the schoolhouse has one room, but it is not clear that he states only one, in which the teacher sleeps beyond a screen, while the applicant states that the school has five rooms separated by permanent brick walls, and that the teacher slept in a bedroom on the west side. The father states that the roof of the schoolhouse is a flat tile roof; the applicant states the roof is flat above the kitchen, but pointed above the other rooms. Is it reasonable to conclude that the applicant, as the result of coaching, could agree so fully with his alleged father on such a multitude of details concerning the home and family and village, and fail to agree on the number of rooms in the only schoolhouse in the village merely because the subject was overlooked in coaching the witness? It is not clear why one teacher would need five rooms in which to teach, nor why twenty pupils would require so many rooms. The father and the appellant agree as to so many details that the discrepancies must be the result of some error or misapprehension in the examination of the witnesses. As to the grandparents' graves, such discrepancies as exist would hardly constitute a fair basis for excluding the appellant. A more serious discrepancy

exists concerning the home of the appellant. The appellant stated that when his father was at home he and his father slept together in a small temporary bed in the bedroom, and that his mother slept with the two-year-old brother in the permanent bed in the same room. The father, on the other hand, testifies that he slept with his wife and baby and that the appellant slept alone in a single bed near the window. It is difficult to understand the reason for this discrepancy. The applicant was nine years old at that time, and it would seem that he should remember whether he slept with his father or with his little brother; and yet the probabilities are that there were changes in sleeping arrangement during the period the father was at home which escaped the attention or recollection of the witnesses. Neither witness was given an opportunity to explain these discrepancies. The applicant was unable to identify a photograph of his alleged uncle found in the files but this failure may have resulted from a poor photograph or from changes in the appearance of the uncle, the appellant not being very familiar with the uncle and not having seen him for several years. We cannot regard very seriously the failure of the applicant to agree with his father as to the number of window panes in each window in his home, whether four or eight, or whether they swung on hinges on the side next the door or on both sides.

The inferences to be derived from the evidence are overwhelming as to the fact that the applicant and his father were familiar with the same village, and with the same home and family. The discrepancies which existed between them are fairly attributable to the frailties of human memory, the method of the examination and the difficulties of language; and do not fairly indicate a deliberate conspiracy to obtain a fraudulent entry into the United States as must be the case if the testimony as to the relationship is false.

Discrepancies in the testimony of the identifying witness Quan Hay as to the name of the alleged father's wife are immaterial. It cannot be doubted that Hom Quong had a wife, and that appellant had a mother. A mistake by an identifying witness as to her name which he later attempted to correct would be no ground for rejecting the testimony of the alleged father or that of the applicant.

The testimony of the applicant differs from that of his two cousins, Hom Keung and Hom Hing, who both testified July 6, 1920, on the occasion of their entry into the United States, as to the villages in the vicinity of the Hom village. The discrepancy is not explained, nor is it shown that the condition remained the same from 1920 to the date when the applicant left in 1929.

Order reversed.