## CHUNG PIG TIN v. NAGLE, Commissioner of Immigration.

### No. 6153.

Circuit Court of Appeals, Ninth Circuit.
Dec. 6, 1930.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and William A. O'Brien, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

RUDKIN, Circuit Judge.

This is an appeal from an order denying a petition for a writ of habeas corpus. The appellant applied for admission as the son of a citizen of the United States. The citizenship of the alleged father is admitted, so that only the question of relationship is at issue on this appeal. Admission was denied because of certain discrepancies in the testimony. Those considered by the Board of Review are the following: First. The alleged father drew a diagram of the ancestral hall in the home village where the appellant attended school, from which it appeared that the hall consisted of one large room, two small ones, and an open court. The witness testified that all three rooms were walled up to the ceiling with brick. The appellant, on the other hand, testified that the ancestral hall contained but one room and an open court, and, when asked if any part of the hall was partitioned off, he answered in the negative. The appellant also drew a diagram of the hall, which disclosed one large room, with an open court in the center. Second. The alleged father was asked whether his family had an ancestral tablet in the hall, and answered that a tablet of his paternal grandfather was there. The appellant was asked the same question and answered in the negative. Third. Members of the Board of Special Inquiry stated that the appellant had a large scar on his left temple, which was very noticeable; whereas, the alleged father, in his description of the appellant, referred to a scar below the left cheek bone, describing it as a small scar, and also mentioned another scar below the right cheek bone. Fourth. The alleged father testified that he gave the identifying witness $30 in gold, or $60 in Chinese money, and a letter, addressed to the appellant, to be taken to his home in China and delivered to his wife. The identifying witness testified that he delivered the $60 in Chinese money to the family of the alleged father and a letter to his wife. The appellant, on the other hand, testified that the witness delivered the $60 in Chinese money, but no letter. Fifth. It was further pointed out that the identifying witness testified that, when he left the house after delivering the money to the family, he parted with the appellant at the door; whereas the appellant testified that he accompanied the witness as far as the village gate.

Before taking up these discrepancies, real or apparent, it may be well to consider the scope of the examination out of which they arose. The testimony of the alleged father, taken at Los Angeles, covers upwards of twenty single spaced typewritten pages, and the testimony of the appellant, taken at San Francisco, covers approximately seven pages. The witnesses were interrogated as to their home life and relatives, near and remote; as to the home village; the number of houses in the village; the names of the occupants and the names of their children; the name of the school teacher and the names of his wife and children; the number of children attending school and their names; the ancestral hall; and a multitude of other collateral questions. In all of this testimony there was such general agreement, and the scope of the examination was so broad, as to preclude any reasonable probability of coaching or collusion.

The importance of discrepancies in testimony must be determined from the entire record in the case, and when the discrepancies in question are considered in that light

they did not, in our opinion, justify the rejection of all testimony given by witnesses who were not otherwise impeached. As said by this court in Go Lun v. Nagle, 22 F.(2d) 246, 247:

"We may say at the outstart that discrepancies in testimony, even as to collateral and immaterial matters, may be such as to raise a doubt as to the credibility of the witnesses and warrant exclusion; but this cannot be said of every discrepancy that may arise. We do not all observe the same things, or recall them in the same way, and an American citizen cannot be excluded, or denied the right of entry, because of immaterial and unimportant discrepancies in testimony covering a multitude of subjects. The purpose of the hearing is to inquire into the citizenship of the applicant, not to develop discrepancies which may support an order of exclusion, regardless of the question of citizenship."

See, also, Nagle v. Dong Ming (C. C. A.) 26 F.(2d) 438; Wong Tsick Wye v. Nagle (C. C. A.) 33 F.(2d) 226; Gung You v. Nagle (C. C. A.) 34 F.(2d) 848; Hom Chung v. Nagle (C. C. A.) 41 F.(2d) 126.

We will now refer briefly to the discrepancies relied upon. In the matter of the first one, the alleged father was not asked to describe the two small rooms, their size, or the purpose for which they were used, and it may well be that for all practical purposes there was in fact but a single room of any consequence in the ancestral hall. As to the second discrepancy, what was meant by the term "family" is not entirely clear, nor is it at all certain that the term would include a remote ancestor, such as a great grandparent. In other words, it may well be that the answer of the alleged father was not responsive to the question at all, and if not, the fact that the appellant answered differently is of no moment. The scar on the left temple of the appellant was the result of a wound received by him so early in life that he could not recall when or how the injury was incurred, nor did the alleged father have any knowledge concerning the same. The scar, therefore, was not a matter of great concern, and it would not be at all surprising if, after the lapse of about five years, the alleged father placed it under the left cheek bone instead of on the left temple, or if he was mistaken to some extent as to its size or location. Indeed, the fact that he testified to the scar on the left side of the face would tend to corroborate him rather than to contradict or weaken his testimony. The same may be said in large measure in regard to the delivery of

the $60 in Chinese money to the family of the alleged father. We can understand how the appellant may have had no knowledge of the delivery of the letter, or failed to recall it if he ever had such knowledge. The fact that he had knowledge of the delivery of the $60 would tend to corroborate him, unless it be said that he was coached on this subject. But if coached as to the $60, why not as to the delivery of the letter as well? The fifth discrepancy is still less important. Surely an American citizen should not be excluded from the United States because he and another witness differed slightly as to whether they parted at the door of the house or at the village gate some years before.

The Board of Special Inquiry found certain discrepancies to which the Board of Review paid no heed. Some of these are set forth in the brief of the appellee and others have been abandoned. It would serve little purpose to consider or set forth these so-called discrepancies here. Suffice it to say that they are even less important than those we have considered, and, viewing the testimony as a whole, as we must, we are constrained to hold that the rejection of the testimony given by the alleged father and the appellant was neither authorized nor justified.

The order is reversed, with directions to issue the writ as prayed.