LOUIE POY HOK v. NAGLE, Com'r of Immigration.

No. 6349.

Circuit Court of Appeals, Ninth Circuit.
April 6, 1931.

754

Dion R. Holm, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Herman A. Van Der Zee, Asst. U. S. Atty., both of San Francisco, Cal.

Before RUDKIN, WILBUR, and SAW-TELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

Petitioner, Louie Fung Leung, has twice made application for admission into the United States on the ground that he is a minor blood son of Louie Poy Hok, a person of Chinese descent, whose status as a resident merchant is conceded. Appellant first applied for admission December 1, 1927. His application was denied by a Board of Special Inquiry and by the Department of Labor on appeal, and a writ of habeas corpus refused by the District Court for the Southern Division of the Northern District of California, whereupon petitioner was deported to China. He again sought admission on April 1, 1930, and presented as additional witnesses Louie Doo Yin, who has twice visited his home in China, and Louie Fung On, an alleged brother, who was admitted as the son of Louie Poy Hok in 1920. The Special Board of Inquiry made the following finding: "In view of the fact that no new evidence has been introduced by any of the principals in this case I cannot see that the present situation has in any way been changed from the one that existed in December, 1927."

This finding was affirmed by the Department of Labor on appeal. On June 26, 1930, a petition for writ of habeas corpus was again applied for in the District Court in this circuit and the petition was denied. This is an appeal from that decision, appellant contending that petitioner was not accorded a fair hearing (and that the findings and excluding decision were not supported by substantial evidence).

Louie Poy Hok, the alleged father, has lived in the United States since 1880, and his status as a merchant is acknowledged. Since his original entry he has made four trips to China. The first was from October 28, 1898, until September 4, 1900, during which time he was married and his oldest son, Louie Fung Chong, was born on November 7, 1899. A second son, Louie Fung On, was born on February 23, 1901, after his father's return to this country. Both of these sons have been admitted to the United States, the former in 1919 and the latter in 1920. The father's second trip to China lasted from October 27, 1908, to October 28, 1910, during which time the petitioner Louie Fung Leung was born on October 1, 1909. There have been two subsequent trips to China, one from 1915 to 1917 and the other from 1922 to 1924.

On his return from China in 1910, Louie Poy Hok, the alleged father, testified as follows:

"Q. How many children have you? A. Three sons, no daughters, Louie Fung Cheong, 12, born KS 25–10–5 (November 7, 1899), now in China. Luie On, 10, born KS 27–1–5 (February 23, 1901), now in China. Luie Leung, 2, born ST 1–8–18 (October 1, 1909), now in China.

"Q. Are these the only children you ever had? A. Yes."

On no less than six occasions since that date, in fact, on every occasion on which he has been called upon to testify before the immigration officers, Louie Poy Hok has stated that he had three sons, the third of whom was Louie Fung Leung, born October 1, 1909. The alleged father so reiterated in 1915 on his departure for China; in 1917, on his return; in 1919, on the admission of Louie Fung Chong, his oldest son; in 1920, on the admission of Louie Fung On, his second son; in 1927, on the first application for admission of the present petitioner; and in 1930, on the present application of Louie Fung Leung, alleged third son. Added to this testimony have been the statements of the two previously entered alleged brothers, on their respective admissions in 1919 and in 1920, that they had a third brother in China who bore the name of the applicant. The oldest alleged brother, Louie Fung Chong, said upon his admission to the United States in 1919 that he had a third brother, Louie Fung Leung, who was born October 1, 1909;

the second alleged brother, Louie Fung On, said upon his admission to the United States in 1920 that he had a third brother, Louie Fung Leung, who was 11 years old (American reckoning) and who was born on October 1, but that he did not remember the year.

A similar case arose in Ng Yuk Ming v. Tillinghast, 28 F.(2d) 547, 548 (C. C. A. 1). There, "13 years before * * * the alleged father * * * testified before the immigration authorities that he had a son bearing the name of the applicant, * * * which he confirmed on every other occasion upon which he was called upon to testify." The decision of the court was that the decision of the immigration officials was not supported by the evidence and the prisoner was ordered released from custody. See, also, Gung You v. Nagle, 34 F.(2d) 848 (C. C. A. 9th). In the instant case the cumulative effect of the repeated assertions by the father and the previously entered alleged brothers that there was a third son, Louie Fung Leung, born October 1, 1909, certainly go farther than a mere indication that the three were suffering from a delusion; the effect of the testimony in the mind of any reasonable man must be to create the belief that there was a third son somewhere in the offing.

█ The present applicant is admitted by Louie Poy Hok to be the son to whom the latter has consistently referred for twenty years; his photographs have been identified as that of the third brother by Louie Fung Chong and Louie Fung On, admittedly the sons of Louie Poy Hok; the applicant is in as consistent agreement with the testimony of his alleged father as were the two previously admitted brothers; he has received passage money to the United States on two occasions from Louie Poy Hok and received $500 Hongkong money from him on the occasion of his marriage. All of these matters have to do with the ultimate question, that of relationship, and tend to prove that the claimed relationship is true as alleged. "There is no conflicting evidence, direct or indirect, on the question of relationship." Mason ex rel. Lee Wing You v. Tillinghast, 27 F.(2d) 580 (C. C. A. 9th); also, Gung You v. Nagle, 34 F.(2d) 848 (C. C. A. 9th). The discrepancies developed, therefore, must be considered in the light of the testimony adduced to prove the relationship. "Mere discrepancies do not necessarily discredit testimony. * * * Testimony must be understood in the light of the reason upon which they rest, * * * otherwise all testimony would be self-impeaching." Wong Tsick Wye v. Nagle, 33 F.(2d) 226, 227 (C. C. A. 9th).

█ The government contends that no new evidence has been presented on this second hearing to warrant admission. The testimony of Louie Doo Yin was dismissed as of little probative value, because he visited the home of the applicant at the request of the alleged father, who admitted that he intended to use him as a witness in the case.

But we cannot view the testimony of the second alleged brother, Louie Fung On, in that light. The whereabouts of this alleged brother in the United States were unknown when the present applicant applied for admission in 1927, and so he was not produced as a witness, but in 1930, on the second application of Louie Fung Leung, the alleged brother, Louie Fung On, made a deposition on his behalf in New York State, where the latter resides. In that deposition he recognized the photograph of the present applicant, and identified him as Louie Fung Leung, the third brother whose name he had given in 1920 when he, Louie Fung On, was admitted into the United States.

It is true that the testimony of Louie Fung On with regard to the date of his alleged brother's birth does not accord with the statements of others, but it does not for that reason discredit the texture of the rest of the testimony. On his admission to the United States in 1920, Louie Fung On testified that he had a third brother, Louie Fung Leung, 12 years old, born ST 1–18—and he did not remember the year. ST 1–18 corresponds to our date October 1, and so is in accord with the rest of the testimony. And it must be remembered that according to Chinese reckoning "12 years old" is equivalent to our "11 years old." Accordingly, the brother "12 years old" would have been born in 1909. At that time, therefore, Louie Fung On's testimony was in accord with that of the alleged father, that of the previously entered brother Louie Fung Chong, and that of the applicant. In 1930 Louie Fung On stated with emphasis that his younger brother was born on October 1, 1912; that he remembered the date because he had been in China at the time it occurred; and that his father had not written him to that effect. There is no reason for giving credence to the statement of a witness who has been away for ten years from the people and surroundings of which he speaks, if other things being equal, he gave a statement of facts substantiated by other witnesses when such

things were fresh in his memory. There are few Americans who could give the exact dates of birth of their brothers and sisters, particularly if they had not seen them for ten years. To believe Louie Fung On's statement that his third brother was born October 1, 1912, and to disregard his former statement in 1920 that said third brother was at that time 11 years old, which would make the year of his birth 1909, is simply to destroy the whole texture of the testimony that allowed the admission of Louie Fung On himself and his older brother Louie Fung Chong. To hold that the year of birth 1912 is correct is to imply that in 1910 the alleged father, Louie Poy Hok, swore falsely that he had a son by the name of Louie Fung Leung who was born in 1909, and that the alleged father has persisted in a perjury ever since. There is nothing in the record to establish such a position and to show that the immigration officers believed such to be the case.

With respect to the date of birth of the applicant, therefore, the testimony of the alleged brother, Louie Fung On, is not corroborative. But the testimony of the latter is new evidence tending to support applicant's claim in that it adds one more link to the chain of identifying a real flesh and blood person with the shadowy "Louie Fung Leung, born October 1, 1909," whose existence has been indicated on official records for at least twenty years. Louie Fung On identified the photograph of the applicant as that of his third brother. This is new material, must be considered and given its due weight.

The discrepancies developed are immaterial. Applicant was able in 1927 to identify photographs of his alleged father and his oldest brother, whom he had seen only three years previously, but he was unable in 1930 to identify photographs of Louie Fung On, whom he had not seen for ten years. An examination of the photographs of Louie Fung On as he was when the applicant last saw him in China, as he was upon his arrival in the United States in 1920, and as he is at the present day shows striking differences. It is not to be wondered that the applicant, who was only eleven years old when his alleged brother came to the United States, should fail to recognize portraits of him taken ten years later with the differences that must necessarily arise from changes in hair-dress, changes in clothes, and the general Americanization in appearance of the older brother. Failure to recognize the photograph is not to be considered as proof that the claimed relationship does not exist.

Applicant and his alleged father agree on the name of the maternal grandmother, but Louie Fung On disagrees. At the time of the latter's admission in 1920 there was a disagreement as to the length of time which she had been dead, but notwithstanding that fact the latter was admitted. It is difficult to understand that where one applicant who disagreed with the father and was admitted, another applicant who agreed with him should be excluded.

The exact details as to the date on which applicant went to a neighboring village to enter a higher school are of minor importance and failure to agree does not discredit the testimony of the father or of the alleged son. Upon such particulars discrepancies are bound to occur.

"If the circumstances respecting which the testimony is discordant be immaterial, and of such a nature that mistakes may easily exist, and be accounted for in a manner consistent with the utmost good faith and probability, there is much reason for indulging the belief that the discrepancies arise from the infirmity of the human mind rather than from deliberate error." Nagle v. Dong Ming, 26 F.(2d) 438, 439 (C. C. A. 9th).

Of similar character is the discrepancy between the testimony of Louie Poy Hok, the alleged father, and the applicant as to where the latter slept. The alleged father claimed that during his last visit to China the son slept in the room with his father and mother, whereas the alleged son claims that he slept at school during that time. It is interesting that such a discrepancy arises very often in the course of questioning of Chinese applicants for admission and the disagreement in so many cases seems inexplicable. The weight given to this discrepancy, however, must be considered only in its relation to the texture of the testimony as a whole. Wong Tsick Wye v. Nagle, supra; Ng Yuk Ming v. Tillinghast, supra; Hom Chung v. Nagle, 41 F.(2d) 126 (C. C. A. 9th).

In view of the very minor character of the discrepancies developed, the refusal of the immigration officers to admit the applicant is in abuse of their discretion and is purely arbitrary.

The order denying the writ of habeas corpus is reversed, and the cause remanded with orders to grant the writ as prayed.