**YOUNG LEN GEE v. NAGLE, Commissioner of Immigration.**

No. 6496.

Circuit Court of Appeals, Ninth Circuit.

Nov. 13, 1931.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and H. A. Van Der Zee, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

SAWTELLE, Circuit Judge.

This is an appeal taken from an order of the United States District Court for the Northern District of California, Southern Division, denying a petition for a writ of habeas corpus.

Appellant's alleged father, Young Ng, was born in the United States on August 1, 1887, and has resided here ever since, except for three trips to China: January, 1908, to June, 1910; November 6, 1915, to July 19, 1917; July 9, 1927, to June 11, 1929. On his return from his first trip there on June 20, 1910, he said that he had a wife, Wong Shee, whom he had married on December 9, 1908; that he had one son, Young Hong Hay, born December 1, 1909; and that his wife had been an expectant mother for two months when he left China.

On October 5, 1915, the alleged father, departing on his second trip to China, testified that he had a wife, Wong Shee, and two sons, Young Hong Hay, 6 years old, and Len Gee, 5 years old; on his return from China he mentioned these two sons and also a third, Young Fook Yin, born in 1916.

On May 5, 1926, the alleged father's oldest son, Young Hong Hay, applied for admission to the United States and was admitted on June 17, 1926, as the son of Young Ng; this son is now in China. On May 29, 1929, the alleged father's third son applied for admission to the United States, and was admitted as the son of Young Ng on July 3, 1929. He is at this time in the United States.

Appellant is the alleged second son of Young Ng. On August 25, 1926, he applied for admission to the United States. At the hearing appeared Young Ng, alleged father, Young Hong Hay, alleged older brother, and an unrelated witness. Admission was denied to appellant Young Len Gee, by the Board of Special Inquiry and the Secretary of Labor. On June 25, 1930, appellant made a second application for entry into the United States, again claiming to be the son of Young Ng. In this hearing, Young Ng again testified, and also Young Fook Yin, admitted as the third son of Young Ng. The alleged older brother did not testify because he was in China at the time. A Board of Special Inquiry decided that appellant was not the son of Young Ng and denied admission, which decision was affirmed by the Secretary of Labor. A writ of habeas corpus was sought in the court below, and from the refusal of the District Court to issue the writ comes this appeal.

The question here is whether the evidence submitted on the application for admission so conclusively established the alleged relationship that the order of exclusion should be

held arbitrary or capricious. The Board of Special Inquiry and the Secretary of Labor denied admission to the applicant on the ground that he had failed affirmatively to establish the claimed relationship to Young Ng, and their decision was based on the development of certain discrepancies. In order to determine whether the order of exclusion was arbitrary, we must first examine the background of the record as a whole.

There is an immigration record of the alleged father, Young Ng, going back as far as June 20, 1910, when he was questioned by the immigration authorities with regard to his family. He testified that he had one son, Young Hong Hay, and testified further:

"Q. Was your wife an expectant mother when you left China? A. Yes, she was about two months gone."

On no less than six occasions since that time he has testified that he had a second son, Young Len Gee, who was born on December 23, 1910. This was corroborated on the admission of Young Hong Hay, alleged older brother of appellant, in 1926, and on the admission of Young Fook Yin, appellant's alleged second brother, in 1929.

To support this affirmative proof of the claimed relationship, there was a material agreement between Young Ng, Young Hong Hay, Young Fook Yin, and the appellant on a multiplicity of matters. The scope of the inquiry was very broad, and there was an accord on the following matters: Family relations, family history, the names of the appellant's grandparents, both paternal and maternal, when they died, whether or not the appellant has any maternal aunts or uncles; the age at which the appellant commenced to attend school, the location and description of the village schoolhouse, the name, age, and family of the village school teacher, the location of the house in which the school teacher lives, the number and names of the pupils attending the school; the name, age and location of the house of the head man of the village, the number of houses in the village, the number of rows in which the houses are arranged, the name, location, and description of the ancestral hall in the village, the names, ages, occupations and families of the fellow villagers, whether or not any fellow villagers are in business at places located outside of the village, whether or not there is a wall around the village, the location of the fish pond in the village, the character of the road leading to the fish pond, the location of the well from which water is obtained for household purposes; the location of the nearest river to the village, whether or not this river is pliable, the name, location and number of stores in the nearest market to the village, the name and location of the nearest market to the village, the name and location of the nearest hill to the village, the kind of trees growing on the sides of the village, the kind of trees growing on the hill nearest the village; the description of appellant's house, the number of rooms, the kind of floors, whether or not it has an open court, whether or not there is any clock in the house, whether or not there are any photographs hanging on the walls, whether or not it has outside windows, the location of the shrine loft in the house, the location of the rooms used for storage purposes, the number of skylights in the bedrooms, kitchens, and in the parlor; the sleeping arrangements in the bedrooms.

A substantial agreement between four people on such a wide range of questions seems to us to be attributable only to the real existence of the claimed relationship, and not to any conspiracy and/or intensive coaching of the present appellant and the two sons of Young Ng who have been previously admitted. See, Go Lun v. Nagle (C. C. A. 9) 22 F.(2d) 246; Wong Tsick Wye et al. v. Nagle (C. C. A. 9) 33 F.(2d) 226; Gung You v. Nagle (C. C. A. 9) 34 F.(2d) 848; Hom Chung v. Nagle (C. C. A. 9) 41 F.(2d) 126, 129; Chung Pig Tin v. Nagle (C. C. A. 9) 45 F.(2d) 484; Louie Poy Hok v. Nagle (C. C. A. 9) 48 F.(2d) 753.

To overcome the burden of proof established by the appellant, the government relies on three discrepancies. The first relates to skylights in the home of the appellant. It may be noted that the skylights were each about one foot square, and that there was an actual agreement all the time as to the number. In 1926, appellant said that the skylights in his house were all covered with glass, but he was not asked if he could see through the glass. At that time the alleged father said that the skylights were covered with glass, but in 1929 he said that the skylights were covered with porcelain, distinguishing between transparent glass and translucent porcelain.

The second discrepancy relied on by the immigration officials is that in 1926 appellant described his family ancestral cemetery as being on a small hill 2 lis from the home village, and that all the land around the village was level except for that hill; the alleged father said that there were two hills, one ½ li from the village where his paternal grandparents and mother were buried, the other

called Tung Luk where his great ancestors were buried at a distance of 3 lis from the village. In 1929, the alleged father said that the hill Luk Tung was 2 lis from the village, that it was the place where his parents and paternal grandparents were buried, and that he did not know where his great ancestors were buried.

The third discrepancy considered important by the government has to do with the arrangement of the pupils' and teachers' desks in the schoolroom in China, and arose in the testimony of Young Hong Hay and of the appellant in 1926.

We think that none of these three, either separately or collectively, are sufficient to warrant the exclusion order of the Board of Special Inquiry. It is not that we are substituting our judgment on the admitted evidence for that of the Board; it is rather that the weight of evidence in support of the claimed relationship is so strong, and is supported by those imponderables of which the Board may take cognizance, that any failure to recognize the claimed relationship is a purely capricious and arbitrary action on the part of the Board.

"In all of this testimony there was such general agreement, and the scope of the examination was so broad, as to preclude any reasonable probability of coaching or collusion." Chung Pig Tin v. Nagle, supra.

"The inferences to be derived from the evidence are overwhelming as to the fact that the applicant and his father were familiar with the same village, and with the same home and family. The discrepancies which existed between them are fairly attributable to the frailties of human memory, the method of the examination and the difficulties of language; and do not fairly indicate a deliberate conspiracy to obtain a fraudulent entry into the United States as must be the case if the testimony as to the relationship is false." Hom Chung v. Nagle, supra.

The Board of Special Inquiry based its order of exclusion on still a fourth factor, namely, that of dialect. However, the Secretary of Labor, to whom the appeal was taken, did not comment upon the dialect feature, and relied solely upon the three discrepancies above referred to. We think it may be reasonably presumed that the Secretary of Labor considered the matter of no importance, and chose to rest his decision on what he considered sounder bases; namely, the three discrepancies. This presumption is strengthened by the fact that in the case of Young Hong Hay, appellant's previously entered alleged older brother, the Board of Special Inquiry found that he spoke See Yip, Sun Ning dialect whereas his father spoke See Yip, Sun Wuey. His admission was denied on that ground, but the Secretary of Labor reversed the decision and admitted Young Hong Hay to the United States. Again, appellant's previously entered alleged younger brother, Young Fook Yin, was found to speak See Yip, Hoy Ping dialect in contrast with his father's See Yip, Sun Wuey, but he also was admitted by the Board of Special Inquiry.

Judgment reversed, and cause remanded to the District Court, with orders to issue the writ as prayed.