## WONG GOOK CHUN v. PROCTOR, Com'r of Immigration. *

### No. 8098.

Circuit Court of Appeals, Ninth Circuit.

July 20, 1936.

Adam Beeler and Edwards E. Merges, both of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., Gerald Shucklin and F. A. Pellegrini, Asst. U. S. Attys., and J. P. Sanderson, U. S. Immigration and Naturalization Service, all of Seattle, Wash., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

The appellant sought admission into the United States at the Port of Seattle,

*Rehearing denied Sept. 21, 1936.

Wash., on May 8, 1935, as the foreign-born daughter of a native, Wong Gim. Her application for admission was denied by the Board of Special Inquiry at Seattle, from which decision she appealed to the Secretary of Labor at Washington, D. C., who dismissed the appeal and directed that she be returned to China. Petition for writ of habeas corpus was filed in the District Court and denied, from which order this appeal is taken.

The applicant, her alleged father, and her alleged brother, Wong Goon, appeared as witnesses before the board. The citizenship of the alleged father is conceded; the only question is that of relationship of the applicant to the alleged father.

It appears from the files that the alleged father returned to the United States from China in January, 1919, after having been in China for a little more than three years. He claimed, as family, a wife, two boys, and one girl. At the examination for readmission he claimed that a boy and a girl had been born on this last trip to China, the boy, Wong Goon, and the girl, Gook Chun. Thus, we have the alleged father, in 1919, claiming a daughter of the same name as the applicant here, and of an age to correspond with that of the applicant. Wong Gim again testified that he had a daughter named Wong Gook Chun at the time of the application for admission of his eldest son, Wong Chung, on September 13, 1923, and on the application for admission of his second son, Wong Goon, June 5, 1928. Both Wong Chung and Wong Goon, at their various examinations, testified that they had a sister named Gook Chun, who was of an age to correspond with that of the applicant. It is very obvious that there is or was, in the family of these people, a girl named Gook Chun whose relationship was acknowledged. The existence of a girl of that name in the family of the above-mentioned Chinese being established, it remains to consider whether the applicant, who claims to be Gook Chun and appears to be of the correct age, actually is that girl.

There is no conflict in the testimony on the question of relationship; each claims the other, father and daughter, brother and sister. The discrepancies, upon which is based the order of exclusion, arose out of what might be termed collateral matters, evidently pursued, as is customary, for the very purpose of bring-

ing out such discrepancies, thus confounding the witness and possibly forcing the truth in a fabricated case. This system has been at times severely criticized by the courts. See Go Lun v. Nagle, 22 F.(2d) 246, 247 (C.C.A.9) ; Ex parte Jew You On (D.C.) 16 F.(2d) 153, 154. But apparently it is the only system thus far devised by the officials in their purpose to effectuate exclusion of those not entitled to admission.

■ In this case, we must determine whether the so-called discrepancies in collateral matters relied upon were of sufficient importance to permit it to be said that the ruling of the board was neither unreasonable, nor arbitrary, nor capricious. "And if it does not affirmatively appear that the executive officers have acted in some unlawful or improper way and abused their discretion, their finding upon the question of citizenship must be deemed to be conclusive, and is not subject to review by the court." Tang Tun v. Edsell, 223 U.S. 673, 675, 32 S.Ct. 359, 361, 56 L.Ed. 606. See, also, Quon Quon Poy v. Johnson, 273 U.S. 352, 358, 47 S.Ct. 346, 71 L. Ed. 680.

On all major points the testimony of the witnesses was in substantial accord; all things the applicant should fairly be expected to know she was able to answer with reasonable accuracy, as compared with answers of the other witnesses on the same points. The record shows that all her answers were promptly given.

All the witnesses were in agreement as to relationship, the members of the family and their ages; the location of the house in the village, the number of its rooms, and its articles of furniture; the location of the well and fishpond; the location of the schoolhouse and the name of the school teacher; the name of the market patronized by the family; and the location of several other houses and the names of the occupants.

The first of the discrepancies relied upon by the Board of Review concerns one Wong Foon, his family, and his whereabouts. When asked whether she knew any one in the United States besides her father and brothers who had become acquainted with her in China, she named Wong Foon and said he had a wife and two sons, forty and thirty years of age, respectively, both living in the Philippine Islands, and that Wong Foon had returned

to the village about three years before and was now living in the United States. The alleged father testified that Wong Foon was in China, having gone there in 1929. The alleged brother said that Wong Foon was a widower, now in China, having gone there in 1929, and that he had two sons, both married and both living with their families in the home village, when he last left China in 1931. He further said that each of Wong Foon's sons had a family consisting of a wife and a daughter, and that Wong Foon had built a new house outside the regular rows of the village since 1929. The applicant denied that Wong Foon had built a new house, said that both his sons were single and that his wife was still living. The alleged father had testified that one of Wong Foon's sons was living in "some Spanish country." The Department's files show that Wong Foon is an alien laborer and was last admitted in 1921, and had not applied for a return certificate since that time.

■ As a result of the very searching examination to which each of the witnesses was subjected, several discrepancies of a minor nature were brought out. The disagreements in the testimony are mainly on points with reference to families of neighbors and, consequently, unless establishing deliberate falsehood or untruthfulness, are of little significance upon the real point of relationship. The father and brothers had been absent from China for many years and might easily be honestly mistaken in this matter. To require absolute exactness on questions of this nature is not according applicant a fair hearing and is an abuse of discretion and serves to retard rather than promote justice.

This court said, in Gung You v. Nagle, 34 F.(2d) 848, 853: "It would seem then that the discrepancy in the testimony of a witness, to justify a rejection of the testimony, must be on some fact logically related to the matter of relationship and of such a nature that the error or discrepancy cannot reasonably be ascribed to ignorance or forgetfulness, and must reasonably indicate a lack of veracity. The difficulty in these cases of 'discrepancy' is that there is no standard of comparison. The immigration authorities know nothing of the actual facts, but match witness against witness and thus develop inconsistencies. Suppose two witnesses testify that the ap-

plicant is the son of an American citizen, but entirely disagree as to some fact concerning the village from which they all claim to come. If both are shown to be wrong in some important and noteworthy feature, it might justify the rejection of the testimony of both; but in the absence of other and affirmative evidence as to the actual fact, how can the testimony of both be rejected? Can we as a matter of common sense reject one because the other has told the truth, and then reject the other also? This seems entirely unreasonable."

Again, in Wong Hai Sing v. Nagle, 47 F.(2d) 1021, 1022 (C.C.A.9th), it was said: "The courts have held that in long and involved cross-examination of several persons covering the minutiæ of daily life, discrepancies are bound to develop and are inconclusive with regard to the testimony as a whole when they are on minor points."

Then, too, we have the alleged father claiming a daughter, Gook Chun, since 1919, on all occasions, and the two brothers claiming a sister. This court said of a similar situation, in Louie Poy Hok v. Nagle, 48 F.(2d) 753, 755: "The present applicant is admitted by Louie Poy Hok to be the son to whom the latter has consistently referred for twenty years; his photographs have been identified as that of the third brother by Louie Fung Chong and Louie Fung On, admittedly the sons of Louie Poy Hok; the applicant is in as consistent agreement with the testimony of his alleged father as were the two previously admitted brothers; he has received passage money to the United States on two occasions from Louie Poy Hok and received $500 Hongkong money from him on the occasion of his marriage. All of these matters have to do with the ultimate question, that of relationship, and tend to prove that the claimed relationship is true as alleged. 'There is no conflicting evidence, direct or indirect, on the question of relationship.' Mason ex rel. Lee Wing You v. Tillinghast, 27 F.(2d) 580 (C.C.A.1st) [sic]; also, Gung You v. Nagle, 34 F.(2d) 848 (C.C.A.9th). The discrepancies developed, therefore, must be considered in the light of the testimony adduced to prove the relationship. 'Mere discrepancies do not necessarily discredit testimony. * * * Testimony must be understood in the light of the reason upon which they rest, * * * otherwise all

testimony would be self-impeaching.' Wong Tsick Wye v. Nagle, 33 F.(2d) 226, 227 (C.C.A.9th) [quoting from Nagle v. Dong Ming, 26 F.(2d) 438 (C.C.A.9)]."

In United States ex rel. Lee Kim Toy v. Day (D.C.) 45 F.(2d) 206, 207, the court said: "The convincing character of such antecedent evidence has been pointed out by the courts in cases of this type. * * * The Boards, in my opinion, did not give this proof the weight which it deserves. There is nothing in their findings to show that they gave it any consideration."

Aside from the minor discrepancies in the testimony, the only possible objection to admission is raised through the receipt by the Immigration Authorities of a letter and telegram stating that there were two girls aboard the steamer upon which the applicant traveled, who were coming to the United States for immoral purposes. A search of the appellant's baggage revealed much more clothing than the board thought proper for a girl of her age and station in life and a few articles which the board deemed strange in the circumstances. At most, these things but arouse suspicion, and suspicion is not enough upon which to base an order of exclusion. Tillinghast v. Wong Wing, 33 F.(2d) 290 (C.C.A.1).

The language used by the court in Fong Tan Jew, etc., v. Tillinghast, 24 F. (2d) 632, 636 (C.C.A.1), may aptly be applied here: "This record shows, as a whole, failure to exercise their great power 'under the restraints of the traditions and principles of free government applicable where the fundamental rights of men are involved, regardless of their origin or race.' * * * The conclusion was a fiat— not a finding grounded on substantial evidence, or upon material discrepancies." Further, as was said by Judge Wilbur, in Hom Chung v. Nagle (C.C.A.) 41 F.(2d) 126, 129: "The inferences to be derived from the evidence are overwhelming as to the fact that the applicant and his father were familiar with the same village, and with the same home and family. The discrepancies which existed between them are fairly attributable to the frailties of human memory, the method of the examination and the difficulties of language; and do not fairly indicate a deliberate conspiracy to obtain a fraudulent entry into the United States as must be the case if

the testimony as to the relationship is false.".

 After an exhaustive study of the record, we are of opinion that the board acted unfairly and arbitrarily in excluding the applicant. Ng Yuk Ming v. Tillinghast, 28 F.(2d) 547 (C.C.A.1).

The order of the court below is reversed, with directions that the writ issue.

Reversed.