**Petition of GEE NAY WAI and Gee Det Yuk For a Writ of Habeas Corpus.**

**No. 34662.**

United States District Court
N. D. California, S. D.
Oct. 3, 1955.

Phelan & Simmons, San Francisco, Cal., for petitioners.

Lloyd Burke, U. S. Atty., San Francisco, Cal., for the U. S.

EDWARD P. MURPHY, District Judge.

The petitioners in this matter are Gee Nay Wai, a Chinese boy, now 25 years of age and Gee Nay Yuk, a Chinese girl, now 21 years of age.

These petitioners arrived in the United States on June 19, 1952, and sought admission into the United States as citizens, i. e., as the foreign born children of Gee Shue Chee, concededly a citizen of the United States. The petitioners' claim for recognition of their citizenship was denied by the Immigration Board of Special Inquiry at the Port of San Francisco and subsequently by the Board of Immigration Appeals on the ground that there are certain alleged variances in the testimony .of the two petitioners, largely with regard to describing various minor details concerning their abode in China and their temporary stay in Hong Kong. Many of these discrepancies the Board of Immigration Appeals conceded to be "of minor importance" and relate to "minor details". On the other hand, the Board considered several similarly trifling variances as tending to discredit petitioners' claim that Gee Shue Chee is their father.

I have reviewed the extensive record consisting of exhibits and documentary evidence taken at the various hearings. This record reflects, and it is conceded by the Board of Immigration Appeals, that the entire history of this family has been known by the immigration authorities since before these petitioners were born. Gee Shue Chee, the father, came to the United States on October 23, 1918 and was admitted as a citizen. In 1929 he described his older son in testimony taken before the immigration authorities. On October 24, 1934 he similarly described his daughter, then slightly over one year old.

His testimony on subsequent occasions since the birth of all three children has been consistent over a period of 20 years. I find no substantial conflict in all of his testimony.

Additionally, as early as 1929 and 1933 the grandparents testified before the immigration authorities. Their testimony then agreed substantially with present testimony. Here it is significant to note that Gee Shue Chee's oldest child Gee Nee Hong, when admitted to the United States at Seattle, Washington, on December 30, 1936 at the age of 6 years, testified that he had a brother Gee Wai, 8 years old (Chinese reckoning) and a

sister Dick Ngook (phonetically Det Yuk) 4 years old (Chinese reckoning). They were of course in China. On the following dates by the persons enumerated below, sworn statements regarding these children were made:

| Date | By | Reference |
|---|---|---|
| 11–26–29 | by father Gee Shue Chee | Exhibit 4 |
| 12–2–29 | by grandmother Fong Shee | Exhibit 3 |
| 8–13–30 | by father Gee Shue Chee | Exhibit 4 |
| 6–8–32 | by father Gee Shue Chee | Exhibit 4 |
| 5–1–33 | by father Gee Shue Chee | Exhibit 4 |
| 5–1–33 | by grandfather Gee Lung | Exhibit 2 |
| 10–24–34 | by father Gee Shue Chee | Exhibit 4 |
| 12–25–36 | by father Gee Shue Chee | Exhibit 5 |
| 12–30–36 | by brother Gee Nee Hong (age 6) | Exhibit 1 |
| 4–3–48 | by father Gee Shue Chee | Travel Affdvt. |
| 6–20–50 | by brother Gee Nee Hong | Travel Affdvt. |
| 6–23–50 | by father Gee Shue Chee | Travel Affdvt. |
| 7–21–51 | by father Gee Shue Chee | Travel Affdvt. |

There is a great deal of other evidence shown over a period of years regarding the existence and relationship of these petitioners to Gee Shue Chee. When the petitioners applied at the American Consul at Hong Kong for travel documents they produced proof that their father Gee Shue Chee had been sending them money for their support in the form of drafts and money orders dating back as far as 1947, and there was also produced at that time evidence that the alleged father had reported the children in his income tax returns dating back as far as 1944. In the current immigration proceeding, testimony was taken from Gee Shue Chee and from each of the petitioners. The questioning went to extreme lengths covering almost every conceivable matter, important or trivial, in the lives of the petitioners. As a matter of fact it was so all-inclusive that the record consumes more than 75 pages of closely typed testimony. The transcript contains more than 1,000 questions. An infinite variety of matters were touched upon in addition to the question of pedigree. They called for the description of graveyards, lakes, ponds or rivers near their home village in China, neighboring houses, windows in the home, lofts, movable ladders, exact location of beds, kerosene lamps, pictures in the home, clocks in the house, family custom as to preparation and time of meals, description of roads near the village, school attendance, names and ages of each adult and child living in the 13 houses in the home village, description of the boat landing at the market place, and the most minute description of the quarters in which the petitioners temporarily resided in Hong Kong before proceeding to the United States, plus other similar trivia too numerous to mention.

Out of this prolonged interview the Board of Immigration Appeals finally referred to but three alleged "conflicts" as being "important", namely, (1) whether one or two taxicabs were used in transporting the petitioners, their friends and baggage to the dock in Hong Kong when they sailed for the United States; (2) whether there were two or three movable ladders around their house in the home village; and, (3) whether electric lights or kerosene lamps were used in the quarters which they occupied temporarily in Hong Kong before proceeding to the United States.

It is incomprehensible to me that the order of the Board of Immigration Appeals should be predicated upon such narrow, tenuous grounds. However, the case follows a familiar pattern. Petitioners seek entrance to the United States as citizens, upon the basis of Section 1993 of the Revised Statutes in force at the time of their births, which provides that children born outside the United States whose fathers are citizens or

the United States are themselves citizens of the United States, unless their fathers never resided in the United States. There is no dispute in this case regarding the citizenship of Gee Shue Chee, the alleged father of petitioners, nor any question of his residence in the United States. The sole issue before us is the question of Gee Shue Chee's paternity of petitioners.

The Board of Special Inquiry on or about August 13, 1952, found that petitioners were not the children of Gee Shue Chee, and the Board of Immigration Appeals affirmed that finding on April 3, 1953. Motion to reopen was denied by the Board of Immigration Appeals on June 3, 1954. Administrative remedies of petitioners have therefore been exhausted. Petitioners contend that they have not had a fair hearing before the administrative boards, and that due process of law was not afforded them in that the finding by the immigration authorities that petitioners have not established the relationship in question is arbitrary.

The government contends that a fair hearing was had, and that the decision of the administrative authorities is final unless arbitrary. The issue to be resolved by this Court is whether the decision of the Board of Immigration was arbitrary.

■■ Courts of this Circuit have repeatedly had occasion to review the record of hearings conducted by the immigration authorities to determine whether their actions were arbitrary and an abuse of discretion. See Mar Gong v. Brownell, 9 Cir., 1954, 209 F.2d 448; Gung You v. Nagle, 9 Cir., 1929, 34 F.2d 848; Louie Poy Hok v. Nagle, 9 Cir., 1931, 48 F.2d 753; Young Len Gee v. Nagle, 9 Cir., 1931, 53 F.2d 448; Nagle v. Jin Suey, 9 Cir., 1930, 41 F.2d 522; Go Lun v. Nagle, 9 Cir., 1927, 22 F.2d 246. Other courts

have faced the same problem. Johnson v. Damon, 1 Cir., 1926, 16 F.2d 65. Without failing to give due weight to the findings of the administrative agencies, the Court of Appeals for the Ninth Circuit has consistently reversed the findings of the immigration authorities when the grounds of the immigration boards' decision were minor discrepancies in the course of a lengthy record of testimony. That court has also taken into consideration the scope and detail of the examination which developed discrepancies in testimony; the proximity or remoteness of the issue upon which a discrepancy was developed to the issue of the disputed relationship; the number of witnesses in substantial agreement as to matters in the record as a whole, aside from the issues upon which discrepancies develop; the period of time over which the relationship has been asserted in other proceedings or records than the immediate hearing to determine the relationship; and last of all, but by no means least, a measure of common sense.

The facts of this case fall squarely within the rule of the cases cited above. The cases cited by the government either do not deal with discrepancies in the record as the basis for the administrative agencies' decisions, see Quon Quon Poy v. Johnson, 1926, 273 U.S. 352, 47 S.Ct. 346, 71 L.Ed. 680; Tang Tun v. Edsell, 1911, 223 U.S. 673, 32 S.Ct. 359, 56 L.Ed. 606; or provide a much more reasonable basis in the record for a finding by the administrative agency that the testimony is false than is provided by the record in the instant case. See Lew Wah Fook v. Brownell, 9 Cir., 1955, 218 F.2d 924 ("fantastic * * * testimony").

■ I believe the action taken by the immigration authorities was capricious and arbitrary.

Let the writ issue as prayed.